UNION TRUST COMPANY, *Ex. vs.* MARY DAVIES.

JANUARY 13, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J.    This is an action in assumpsit brought by the executor of the will of Jennie Moore to recover the sum of $3,770.69 in two savings bank accounts which were transferred to the defendant by Jennie Moore on November 1, 1929.    The trial in the Superior Court resulted in a verdict for the plaintiff for $4,000 and the case is here on the defendant's exceptions as follows:    to the admission and exclusion of testimony; to the refusal to strike out testimony; to the refusal to direct a verdict for the defendant and to the denial of the defendant's motion for a new trial.

Mrs. Moore for more than a year prior to her death had been suffering from a cancer.    In August, 1928, just before an operation for her affliction, she executed the will under which the plaintiff was appointed her executor.    The defendant, who was a sister of Mrs. Moore, was given $100, and Bertha P. Dubeau was made the residuary legatee. Although Mrs. Dubeau may have been a foster daughter, she had been brought up to believe that she was an actual daughter of Mrs. Moore and she is thus described in the

will. The property consisted of the two bank deposits and a parcel of real estate of small value.

After the operation in August, 1928, Mrs. Moore appeared to improve somewhat in health but in the late spring of 1929 she suffered a recurrence of the cancer and from the following June until the time of her death her condition became progressively worse. On September 30, 1929, she was moved to the home of her sister, the defendant. Thereafter at times she was in a coma, and, at other times, even when conscious, she often failed to recognize her friends. The defendant procured and prepared the orders on which the money was withdrawn, obtained their execution and withdrew the money on November 1, 1929, ten days before Mrs. Moore's death. Although Mrs. Moore could normally write well, she signed the orders by her mark. The defendant never mentioned to Mrs. Dubeau the will or the withdrawal of the money until a few days before the will was probated.

The defendant contends that she was given the money by Mrs. Moore with instruction to pay her funeral expenses and certain other bills and to keep the remainder.

The plaintiff contends that the defendant secured the execution of the money orders by the exercise of undue influence over Mrs. Moore at a time when she was mentally incompetent to transact business or to dispose of her property.

The defendant excepted to the admission of testimony by Dr. Mowry—based upon a hypothetical question reciting the medical history of the case—that it was his opinion that on November 1, 1929, Mrs. Moore had not sufficient mental capacity to execute an instrument giving away all her personal estate.

It is apparent that counsel for the defendant at the time the question was asked had no objection to the history of the case as recited in the hypothetical question. He now suggests that the question contained an erroneous statement in a portion of the history. The question implied that

from the time of the operation Mrs. Moore gradually failed. It is probably a fact that after she had recovered from the immediate effects of the operation her health for a short time appeared to improve. In view of the very complete history contained in the question, the slight error—if such it was— is of little importance. However, counsel for the defendant by his conduct at the trial waived all objection to the recital of the history of the case. When his objection to the question was made the following colloquy between said counsel and the trial justice was held:

THE COURT: "Have you any objection to the question based on the ground it does not contain— —that it is a fair summing up of the testimony, and if so, I wish you would point out the specific portions which you claim are omitted."

MR. WILDES: "I am simply objecting to it on the theory that the testimony, as quoted here up to the present time, is insufficient for an expert to form an opinion."

THE COURT: "You do not suggest to the court any specific testimony which you wish to have incorporated in the question to make it more complete?"

MR. WILDES: "Not at the present time, no."

.  .  .

THE COURT: "You have nothing further?"

MR. WILDES: "No."

THE COURT: "I will overrule the objection and note your exception."

The defendant excepted to the exclusion of testimony as to the amount of bills which she had paid. She was permitted to testify as to what bills she paid, as bearing upon the alleged agreement, but not as to the amounts paid. She contended that the agreement was that she would pay certain bills and retain the remainder of the money. Her right to pay bills rested entirely upon the validity of the

gift. If she obtained no title to the money by reason of the invalidity of the gift, it is elementary that she had no right to use the money for the payment of bills or for any other purpose. If she paid bills in such circumstances she was a mere volunteer with no duty to perform or property which required protection.

The ruling refusing to direct a verdict for the defendant was correct. Much evidence of mental incapacity had been received. The law is well settled that a verdict should not be directed for a defendant if, on any reasonable view of the testimony, a plaintiff can recover. *Reddington* v. *Getchell*, 40 R. I. 463; *Riley* v. *Tsagarakis*, 50 R. I. 62.

The defendant excepted to the following instruction to the jury: "It is for the defendant to show you, by a fair preponderance of the testimony, first—Jennie Moore was of a mental capacity to make a gift on November 1, 1929, and second—the transfer was the result of the free exercise of the will of Jennie Moore and was not the result of the exercise of the will of Mary Davies over her."

It cannot be denied that at the time the money orders were signed Mrs. Moore was weak in mind as well as in body. She was almost helpless and in the home of the defendant, who not only cared for Mrs. Moore but was in a somewhat confidential relation to her. The gift, if such the transaction was, disposed of practically all her estate. It is apparent that the defendant concealed the transaction from Mrs. Dubeau as long as possible. This in itself is a suspicious circumstance. In 28 C. J. at p. 670, it is stated that "where circumstances are such as to suggest fraud and undue influence, the burden is on the donee to overcome the presumption of fact arising therefrom." It is elementary that a person occupying a position of trust and confidence has the burden of showing that no advantage was taken of the donor. It is well established that a person who sets up a gift has the burden of proving that the gift was actually made. See 28 C. J. p. 670; *Eastman* v. *Dunn*, 34 R. I. 416; *Colangelo* v. *Colangelo*, 46 R. I. 138; *Stiness* v. *Brennan*, 51 R. I. 284.

The remaining exceptions have been considered and found to be without merit. All defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Cooney & Kiernan, John P. Cooney, Jr., Peter Leo Cannon,* for plaintiff.

*Frank H. Wildes,* for defendant.